IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BRYAN GRIGGS and VALERIE GRIGGS,**

                  Plaintiffs,

     v.

**ALLSTATE INSURANCE COMPANY,**

                Defendant.

No. 3:12-cv-00463-MO

OPINION AND ORDER

**MOSMAN, J.**,

      Plaintiffs Bryan and Valerie Griggs believed that their Renters Policy and Personal Umbrella Policy entitled them to a defense in an underlying lawsuit. Defendant Allstate Insurance Company disagreed and refused to provide a defense, prompting the Griggses to file the instant action. Now before the Court is Allstate's motion for summary judgment [10]. Because I find the business exclusion to the Renters Policy applies and excuses Allstate from a duty to defend, Allstate's motion is GRANTED.

1 – OPINION AND ORDER

## BACKGROUND

I.    **The Lawsuits**

    A.    ***The Nevada Lawsuit***

HDMC Group LLC and Advanced Travel Systems, Inc. ("ATS") are hotel room wholesalers that purchase rooms in bulk and re-sell them at a profit. Todd Harrington is HDMC's founder, managing partner, and president. He is also the president and CEO of ATS. Mr. Griggs started working for HDMC in October 2008, and became CFO in June 2009. (Foley Decl. [12] Ex. 1 ¶¶ 9–10, 13.)

At the relevant time, HDMC and ATS maintained several company credit cards to purchase blocks of hotel rooms when they became available. These company credit cards had daily limits that prevented HDMC and ATS from making certain purchases. To solve this problem, Mr. Griggs agreed to use his personal credit card to cover the balance. Under this agreement, Mr. Griggs would use his personal credit card to make payments, ATS would reimburse him, and he would retain his credit card reward points as a benefit. (*Id*. [12] Ex. 1 ¶¶ 18–19.)

Beginning in May 2010, Mr. Griggs made several payments on behalf of HDMC and ATS. (*Id*. [12] Ex. 1 ¶ 20.) In October 2010, however, the relationship between Mr. Griggs and Mr. Harrington began to deteriorate. Mr. Griggs alleges that the cause of the breakdown was that he became aware of discrepancies in his credit card billing statements. (Resp. [34] at 3.) Mr. Harrington, in contrast, alleges that Mr. Griggs became frustrated with his lack of access to company accounts and eventually misappropriated company funds. (Foley Decl. [12] Ex. 1 ¶¶ 21–24.) Whatever the cause of the breakdown, HDMC terminated Mr. Griggs on November 17, 2010.  (*Id*. [12] Ex. 1 ¶ 26.)

2 – OPINION AND ORDER

After Mr. Griggs's termination, he began to challenge several of his personal credit card charges as unauthorized. (*Id.* [12] Ex. 1 ¶¶ 27–30.) In response to these challenges, HDMC and ATS filed the underlying lawsuit in Nevada state court. The underlying complaint alleges seven claims for relief: (1) intentional interference with contract; (2) intentional interference with prospective economic advantage; (3) misrepresentation and fraud; (4) breach of contract; (5) conversion; (6) unjust enrichment; and (7) injunctive relief. (*Id.* [12] Ex. 1 ¶¶ 37–85.) At the root of these claims is the allegation that after HDMC and ATS reimbursed Mr. Griggs for credit card charges made on their behalf, he either wrongfully disputed these authorized charges or failed to make them at all.

## B.    *The Oregon Lawsuit*

On January 30, 2011, the Griggses tendered their claim to Allstate and requested a defense in the underlying lawsuit. (Griggs Decl. [35] ¶¶ 28–31.) Allstate denied coverage and refused to provide a defense. In response, the Griggses filed the instant action. In the complaint, the Griggses allege six claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) negligence per se; (5) violation of Oregon's Unfair Claims Settlement Practices Act, Or. Rev Stat § 746.230;[1] and (6) declaratory relief. (Compl. [1-1] ¶¶ 18–39.) All of these claims are premised on the argument that Allstate wrongfully refused to provide a defense in the underlying lawsuit. Therefore, Allstate's duty to defend is the central issue in this case.

---

[1] The Griggses have agreed to dismiss their claims under Or. Rev Stat § 746.230. (*See* Resp. [34] at 11.)

II.    **Legal Standards**

    A.    *Summary Judgment*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

    B.    *Duty to Defend*

Under Oregon law, "[t]he insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Ledford v. Gutoski*, 877 P.2d 80, 83 (Or. 1994) (emphasis in original). Generally, a court resolves the issue of an insured's duty to defend by analyzing only two documents: the insurance policy and the operative complaint in the underlying action. *Abrams v. Gen. Star Indem. Co.*, 67 P.3d 931, 933 (Or. 2003). If there is "[a]ny ambiguity in the complaint with respect to whether the allegations could be covered" by the insurance policy, that ambiguity "is resolved in favor of the insured." *Ledford*, 877 P.2d at 83.

## DISCUSSION

Allstate's duty to defend turns on two questions: (1) whether any initial grant of coverage of either the Renters Policy or the Personal Umbrella Policy purports to cover the allegations of the underlying complaint, and (2) whether any exclusion applies. Under Oregon law, the initial burden of proving coverage is on the insured. At that point, the burden shifts, and the insurer

must prove that an exclusion applies. *See Emp'rs Ins. Of Wausau, A Mut. Co. v. Tektronix, Inc.*, 156 P.3d 105, 119 (Or. Ct. App. 2007).  Here, although the Renters Policy appears to cover the allegations of the underlying complaint, the business exclusion clearly applies. Consequently, Allstate has no duty to defend.

I.    **<u>Grant of Coverage</u>**

    A.    ***The Renters Policy***

The Renters Policy has two relevant grants of coverage. The first grant is as follows:

**Additional Protection**

. . .

    2.    **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**

        **We** will pay for loss:

        a)    that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;

        . . .

        **We** will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2(a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

(Foley Decl. [12] Ex. 2 at 24.) Allstate argues that this first grant of coverage does not reach the allegations of the underlying complaint because no bank or credit card company has sued the Griggses for "enforcement of payment." Instead, HDMC and ATS have sued them for alleged misconduct. As a result, Allstate contends that the Griggses have failed to show that the allegations of the underlying complaint fall within this first grant of coverage. (Reply [40] at 3.)

Contracts for insurance are construed liberally in favor of the insured, *O'Neill v. Standard Ins. Co.*, 554 P.2d 997, 999 (Or. 1976), and any ambiguity with respect to whether the allegations could be covered is resolved in the insured's favor, *Ledford*, 877 P.2d at 83. Certainly one possible interpretation of this duty to defend clause is that it only covers situations in which a bank or credit card company tries to make the insured pay for an allegedly unauthorized purchase, as Allstate suggests. But nothing in the text compels that interpretation. If an action prevents an insured from disputing allegedly unauthorized charges, it can be considered a suit for the "enforcement of payment." Here, for example, the Seventh Claim for Relief seeks an injunction to stop the Griggses from disputing any credit card charges related to payments made to HDMC vendors. (Foley Decl. [12] Ex. 1 ¶¶ 79–85.) Therefore, construing the text liberally and resolving the ambiguous phrase "enforcement of payment" in the Griggses' favor, at least the Seventh Claim for Relief falls within the Renters Policy's first grant of coverage.

The Renters Policy's second grant of coverage states that "**Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy." (*Id*. [12] Ex. 2 at 29.) None of the allegations of the underlying complaint amount to bodily injury or property damage, as defined in the Renters Policy. (*Id*. [12] Ex. 2 at 17–18.) As a result, the allegations of the underlying complaint do not fall within the Renters Policy's second grant of coverage.

### B.    *The Personal Umbrella Policy*

The Personal Umbrella Policy's relevant grant of coverage states that "**Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury**, **personal injury** or **property damage**, subject to the terms, conditions and limits of this policy."

Here, too, the policy's definition of key terms conclusively rules out coverage. (*Id.* [12] Ex. 3 at 114.) None of the allegations of the underlying complaint amount to bodily injury, personal injury, or property damage, as defined in the Personal Umbrella Policy. (*Id.* [12] Ex. 3 at 111–12.) Consequently, the allegations of the underlying complaint do not fall within this policy's grant of coverage.

## II.    The Business Exclusion

As described in the previous section, only the Renters Policy's first grant of coverage—the Additional Protection section—reaches the allegations of the underlying complaint. The question now becomes whether an exclusion applies.

The Additional Protection section includes an exclusion of coverage for "[l]oss arising from any **business** of an **insured person**." (*Id.* [12] Ex. 2 at 24.) The Renters Policy defines business as "any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes." (*Id.* [12] Ex. 2 at 17.)

At the outset, I note that both the language of the exclusion and the definition of business itself are broad and inclusive. Oregon courts have construed the phrase "arising from" broadly in the context of policy exclusions to mean "flowing from" or "having its origin in." *See, e.g., Ristine v. Hartford Ins. Co.*, 97 P.3d 1206, 1208 (Or. Ct. App. 2004). Moreover, the definition of business "indicates that whether the activity is major or minor or somewhere in between, if it is engaged in for economic gain, it is a business activity." *Allstate Ins. Co. v. Hudler*, 2011 WL 1498370, at *11 (D. Or. Feb. 25, 2011). The breadth of this exclusion in the abstract is only marginally helpful in this case, however. Here, the parties focus on the relatively narrow question of whether the underlying complaint alleges activities engaged in for "economic gain."

Although the Griggses acknowledge that Mr. Griggs agreed to make at least some personal credit card charges on behalf of HDMC and ATS, they contend that this agreement was not for economic gain for two reasons. First, HDMC and ATS were to reimburse the Griggses for the exact amount of the credit card charges. As a result, the core transaction did not afford them any economic benefit. (Resp. [34] at 8–9.) Second, the Griggses argue that reward points should not be considered economic gain since the IRS does not currently assert that an individual has understated his federal tax liability by reason of the receipt or personal use of such reward points that are attributable to business travel. (*Id*. [34] at 9); *see also* I.R.S. Announcement 2002-18, 2002-10 I.R.B. 621.

In my view, however, the underlying complaint alleges losses arising from business, i.e., losses arising from activities engaged in for economic gain. According to the underlying complaint,

> Griggs would use a personal American Express card to make payments due from HDMC or ATS to various hotels and travel wholesalers, as those vendors required immediate payment by credit card from rooms being purchased by HDMC. In exchange, Griggs was reimbursed by check from ATS, and was *afforded the benefit* of receiving rewards points on his American Express card accumulated through the transactions.

(*Id*. [12] Ex. 1 ¶ 19 (emphasis added).) Thus, the underlying complaint alleges that Mr. Griggs agreed to make personal credit card charges on behalf of his employer in exchange for reward points. The purpose of this agreement was obviously economic gain. That is not rebutted by the IRS treatment of reward points. The IRS position cannot be read to mean that reward points do not amount to economic gain. Rather, it merely declines to treat them as taxable income.

More fundamentally, the Griggses' focus is too narrow. Whether or not the discrete transactions involved economic gain, they were engaged in as part of a business that existed to

8 – OPINION AND ORDER

make money. And the losses arose out of that business. Therefore, the business exclusion applies and precludes coverage for all losses alleged in the underlying complaint.

**III.    Claims**

My finding that Allstate has no duty to defend directly disposes of the Griggses' claims for breach of contract and declaratory relief. By extension, that finding also disposes of the Griggses' claims for breach of the implied covenant of good faith and fair dealing, negligence, and negligence per se.[2] Therefore, summary judgment is granted to Allstate on all of the Griggses' claims for relief.

**CONCLUSION**

For the foregoing reasons, Allstate's motion for summary judgment [10] is GRANTED. In addition, Allstate's motion to strike the supplemental declaration of Bryan Griggs [43] is GRANTED, since the filing of that declaration violated Local Rule 7-1(f).

IT IS SO ORDERED.

DATED this   6th   day of March, 2013.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

---

[2] I note that there are alternative means to dismiss the negligence claims, too. Under Oregon law, "to bring a tort claim based on conduct that is also breach of a contract, a plaintiff must allege, first, that the defendant's conduct violated some standard of care that is not part of the defendant's explicit or implied contractual obligations; and, second, that the independent standard of care stems from a particular special relationship between the parties." *Strader v. Grange Mut. Ins. Co.*, 39 P.3d 903, 906 (Or. Ct. App. 2002) (citing *Georgetown Realty v. The Home Ins. Co.*, 831 P.2d 7, 14 (Or. 1992)). In this context, a relationship is special if it allows one party to exercise control in the first party's best interest. *See Bennett v. Farmers Ins. Co. of Oregon*, 26 P.3d 785, 799 (Or. 2001). Unlike cases in which the insurer undertakes the insured's defense, there is no such special relationship here.

9 – OPINION AND ORDER